# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| AMERICAN CASINO & ENTERTAINMENT PROPERTIES, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 2:12-cv-01054-GMN-VCF |
| vs. | ) ) | **ORDER** |
| MARCHEX SALES, INC., | ) ) | |
| Defendant. | ) ) ) | |

Pending before the Court is the Motion for Preliminary Injunction (ECF No. 3) filed by Plaintiff American Casino & Entertainment Properties, LLC ("ACEP") against Defendant Marchex Sales, Inc. ("Marchex").  Marchex filed a Response (ECF No. 13) and ACEP filed a Reply (ECF No. 14).

## I.   BACKGROUND

ACEP is the holding company for entities that own and operate the Nevada hotel casino properties: the Stratosphere tower, hotel and casino, the Aquarius hotel and casino, Arizona Charlie's Decatur hotel and casino, and Arizona Charlie's hotel and casino. (Compl., 2:18-21, ECF No. 1.)  ACEP alleges that in 2009 it expanded its players rewards club, relaunching it as ACEPLAY, and launching the website at <aceplayinfo.com>. (Compl., 2:26-28 – 3:1-3.)  ACEP alleges that the ACEPLAY design mark is used "in connection with registering players for the ACEPLAY program, issuing ACEPLAY rewards cards to players, advertising and marketing the ACEPLAY program through multiple means, and administering the ACEPLAY program with players, including providing program benefits." (Compl., 3:4-8.)

In 2009, ACEP filed five service- and trade-mark applications with the United States Patent and Trademark Office using the words "aceplay" or "ace play," two of which matured

into service mark registrations on June 27, 2010. *See* ACEPLAY, Registration No. 3,859,348 (relating to U.S. Trademark Application Serial No. 77/853,236); ACEPLAY, Registration No. 3,824,189 (relating to U.S. Trademark Application Serial No. 77/853,232); U.S. Trademark Application Serial No. 77/826,850 (filed Sept. 15, 2009); U.S. Trademark Application Serial No. 77/826,927 (filed Sept. 15, 2009); U.S. Trademark Application Serial No. 77/826,941 (Sept. 15, 2009).[1]  The two registered marks are for the ACEPLAY design mark, and the three remaining applications are for the ACEPLAY word mark. *Id.*  ACEP refers to these applications and registrations as the "ACEPLAY Marks" and alleges that "[b]ased on its federal registrations and extensive use, ACEP owns the exclusive right to use the ACEPLAY Marks in connection with hotel, casino and related services and goods in the United States." (Compl., 4:19-20, 25-27.)

Marchex alleges that it bought the domain name <aceplay.com> in 2005 and attaches a page from a Purchase Agreement dated November 19, 2004, and a link to the web page where the full text of the Purchase Agreement is provided:  **http://sec.gov/Archives/edgar/data/1224133/000119312504212047/dex24.htm.**  (Smith Decl., 1:21-27, Ex. A, ECF No. 13-1.) However, neither the exhibit nor the web page refer to the <aceplay.com> domain.

In its motion, ACEP submitted screenshots of the web page located at <aceplay.com> that were allegedly taken on March 10, 2011 and June 20, 2012. (Ex. C, Ex. B to Williams Decl., ECF No. 3-1.)  The March 2011 screenshot depicts a text-only web page with what appear to be links to web pages with the descriptions:

- "Casinos,"
- "Online Gambling,"
- "Video Erotici,"
- "Video Pazzi,"
- "Scarica Video,"

---

[1] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of these applications and registrations filed with the United States Patent and Trademark Office.

- "Video Filmati,"
- "Video Pornografico,"
- "Video Delire,"
- "Gambling Virtual Casino," and
- "Bingo Gambling."

under the heading "Related Searches," and links to:

- www.livingsocial.com,
- www.doctorcarpetlv.com,
- www.easyclicktravel.com/Las-Vegas,
- www.amicusreporters.com,
- www.ticketfiesta.com,
- <manageengine.com/passwordmanagerpro>,
- www.prosoft3d.com/passwordrecovery,
- <myfazolisoffers.com>,
- www.mandalaybay.com, and
- www.onetime.com.

under the heading "Sponsored Listings," with short descriptions attached. (Ex. C to Williams Decl., ECF No. 3-1.)

In contrast, the June 2012 screenshot depicts two photos and color blocking, including a large color photo of a girl relaxing on a couch with a cell phone and a laptop, as well as a smaller photo of business professionals, with what appear to be links to websites under the descriptions:

"Aquarius Hotel in Laughlin,"
"Laughlin Hotel Deals,"
"Stratosphere,"
"Arizona Charlie's,"
"Play Mario Games,"
"Play Roulette,"
"Play Slot Machine,"
"Play Free Fun Games,"
"Play Race Car Games,"
"Casino,"
"Learn How to Play Guitar,"
"Play for Money,"

"Play Poker,"
"Play Casino Black Jack,"
"Play Casino Game Online,"
"Casino Gambling Online,"
"Las Vegas Casino Poker Chips,"
"Play Games for Prizes,"
"Gambling," and
"Play Free Win Cash."

with the words "Related Searches" in the top left and bottom left corners of the page. (Ex. B to Williams Decl., ECF No. 3-1.)  In both the March 2011 and June 2012 screenshots, the <aceplay.com> domain name is featured at the top of the page, in the same design, and at the bottom of the page the sentence, "This domain may be for sale" appears, with what seems to be a link with the description, "Click here for more information." (Ex. B, Ex. C to Williams Decl., ECF No. 3-1.)

On June 20, 2012, ACEP filed its Complaint (ECF No. 1) for trademark infringement and cybersquatting against Marchex, along with a motion for temporary restraining order (ECF No. 2) and the instant motion, relating to Marchex's use of the domain name <aceplay.com>. The Court granted the motion for temporary restraining order and set a hearing on the instant motion that took place July 3, 2012. (ECF No. 8.)

## II.   LEGAL STANDARD

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

The Ninth Circuit has held that "'serious questions going to the merits' and a hardship

balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l. Molders' & Allied Workers' Local Union No. 164*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing *11 C. Wright and A. Miller, Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

## III. __DISCUSSION__

Plaintiff asserts two causes of action in the Complaint: (1) Cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d); and (2) Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114(a)[2]. (ECF No. 1.) Since Marchex does not appear to seriously challenge the elements of irreparable harm or that an injunction is in the public interest, the Court will focus its discussion on the merits of ACEP's claims and the balance of equities. As discussed below, the Court finds that there is a strong likelihood of success on the merits regarding ACEP's claim for infringement, but not for cybersquatting. However, the Court does find that there are serious questions going to the merits regarding ACEP's cybersquatting claim, and that the balance of equities tips sharply towards ACEP.

---

[2] This appears to be a typo, since the statute discussed is located at 15 U.S.C. § 1114(1)(a).

**A.     Likelihood of success on the merits.**

　　　　*1.     Infringement.*

The allegedly infringing conduct here is not Marchex's registration of the domain name <aceplay.com>, but its apparent use of ACEP's mark in relation to the website associated with the <aceplay.com> domain name.

"To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party 'must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'" *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)). The statute provides:

> Any person who shall, without the consent of the registrant—
>> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive
>> * * *
>> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

　　　　*a.     Ownership and Use in Commerce*

"It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). "When proving ownership of a trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark." *Id.*; 15 U.S.C. §

1057(b); 15 U.S.C. § 1115(a).

Here, Marchex challenges ACEP's ownership of the ACEPLAY mark by arguing that its registration of the domain name <aceplay.com> "to generate revenues" prior to ACEP's federal registration of the ACEPLAY mark gives Marchex senior user status in the ACEPLAY mark. However, Marchex does not provide any legal support for the contention that its use of a domain name registration alone is sufficient to establish "use in commerce" that rebuts the presumption of validity conferred to federal registrants of the mark.

The only details Marchex provides as to the content of the web page located at the domain <aceplay.com> prior to 2009 is a screenshot captured by the Wayback Internet Archive from August 2000. (Ex. B. to Smith Decl., ECF No. 13-3.)  In this version of the web page at <aceplay.com>, the word "aceplay" is depicted with a graffiti-type design with the subheading, "The Game Site Network" and the page welcome includes a description referring to the site as "your first stop for all your gaming needs." (*Id*.)  However, no mention of casinos, gambling or hotels is made, and instead "gaming" refers to "all the best sites for cheat codes, online gaming, including Playstation, PC computer, Nintendo 64 and Dreamcast Platforms." (*Id*.)  Because the ACEPLAY mark does not encompass the type of "gaming" described in the 2000 version of the <aceplay.com> web page, the Court does not find that this use of the <aceplay.com> domain name constitutes use of the ACEPLAY mark sufficient to rebut the presumption of ownership in ACEP.

### b.   *Likelihood of Confusion*

The Ninth Circuit has identified eight relevant factors that may be used as a proxy or substitute for determining the "likelihood of confusion": (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  These factors are not exhaustive, and are not intended as a "rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011).

Marchex focuses its argument relating to "likelihood of confusion" by arguing the existence of defects in the Gilland Declaration offered by ACEP, including the arguments that Gilland failed to address the *Sleekcraft* factors, that the declaration is inadmissible and that without it ACEP cannot meet its burden to show likelihood of confusion. (Def.'s Resp., 6-8, ECF No. 13.)  To the extent that Marchex is attempting to preclude the Court from considering the Gilland Declaration by reference to the summary judgment standard, Federal Rule of Civil Procedure 56, or Federal Rule of Evidence 602, Marchex's arguments have no legal support.  The admissibility of the Gilland Declaration relates only to the weight the Court gives to the statements, not to the Court's ability to consider the statements at all.  *See Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing *11 C. Wright and A. Miller, Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial.  The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.").

Furthermore, even without relying on the Gilland Declaration, the Court has enough information on which to base its analysis as to the "likelihood of confusion."  Three factors have been recognized as especially important to this analysis in the context of domain names: (1) the similarity of the marks; (2) the relatedness of the goods and services offered; and (3) the simultaneous use of the Internet as a marketing channel. *Network*, 638 F.3d at 1146.  Here, relying on the two screenshots presented in the Williams Declaration and ACEP's filings with the United States Patent Office relating to the ACEPLAY mark, the Court finds that confusion

is likely.

With the domain names <aceplay.com> and <aceplayinfo.com>, both Marchex and ACEP use the Internet as a marketing channel, and ACEP also makes use of the ACEPLAY mark outside of the Internet context as well. Marchex's apparently recent design revision includes color-blocking that makes it difficult to discern the purpose of the site as a mere directory, as Marchex appears to argue, which creates a similarity between the ACEPLAY mark and Marchex's use of the <aceplay.com> domain, in addition to the similarity in the domain names themselves. Furthermore, listing each of ACEP's casino hotels by name, and referring to Las Vegas, gambling, and casino games such as poker, slot machines and roulette all indicate relatedness of the goods and particularly the services offered. An additional consideration is the fact that potential consumers of the services offered by ACEP are likely to include tourists to Las Vegas who are not already familiar with the services included under the ACEPLAY mark.

At the motion hearing, counsel for Marchex attempted to argue that current customers of ACEP's loyalty rewards program would know the difference and would not be likely to be confused. However, this argument does not address the likelihood of initial interest confusion by potential consumers. *See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1062 (9th Cir. 1999).

Therefore, for the reasons discussed above, the Court finds that ACEP has met its burden to show a strong likelihood of success on the merits as to its claim for infringement.

### 2.    *Cybersquatting.*

As for ACEP's cybersquatting claim, the Court cannot find that ACEP has met its burden to show a strong likelihood of success on the merits, since the statute requires that the

/ / /

/ / /

mark be "distinctive at the time of registration of the domain name"[3] and ACEP does not appear to dispute Marchex's assertion that the domain name was registered prior to ACEP's registration of the mark in 2009.  At the motion hearing, counsel for ACEP stated that this issue may need further briefing.  The Court agrees, since neither party presented argument as to the courts' interpretation of the statutory language, "at the time of registration" and the application of case law to the facts in this case. *See generally GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011) (interpreting the meaning of "registration" in 15 U.S.C. § 1125(d)); *DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1224 (9th Cir. 2010) ("Even if a domain name was put up innocently and used properly for years, a person is liable under 15 U.S.C. § 1125(d) if he subsequently uses the domain name with a bad faith intent to profit from the protected mark by holding the domain name for ransom."); *Ricks v. BMEzine.com, LLC*, 727 F.Supp.2d 936, 954-55 (D. Nev. 2010) (addressing Congressional intent and case law as to interpretations of the word "registration" in 15 U.S.C. 1125(d)).

However, the Court does find that ACEP has met its burden to show serious questions going to the merits, and as discussed below, has shown that the balance of equities tips sharply in its favor.  Accordingly, the Court finds that an injunction can be issued based on ACEP's cybersquatting claim as well as the infringement claim.

**B.    Balance of Equities.**

Upon consideration of the parties' briefs and the arguments presented at the motion hearing, the Court finds that the balance of equities tips sharply in ACEP's favor.

---

[3] The statute provides:
> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>> (ii) registers, traffics in, or uses a domain name that—
>>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark

15 U.S.C. § 1125(d).

When questioned by the Court at the motion hearing, counsel for Marchex first argued that ACEP suffered no hardship from Marchex's use of the website content at the <aceplay.com> domain, and that as a "worst-case scenario" ACEP actually *benefited* from Marchex's use of the domain in "driving customers to their sites" and "generating traffic to their websites which helps them."  However, as noted by counsel for ACEP, this argument is not legally supported and the Court does not find it persuasive.

Then, when asked specifically by the Court what harms Marchex suffers as a result of the injunction, counsel for Marchex argued vaguely that the value of the <aceplay.com> domain name is based on its value for marketing the domain name as an internet gaming space, and that "the values of those are very difficult to estimate right now."  He went on to give the example that other companies interested in online gaming, such as "MGM," "IGT" and "Bally's" may possibly have interest in purchasing the <aceplay.com> domain name because of its association with the "ace" playing card.  However, without more, the Court cannot find any basis to assign great value to that possibility, particularly considering ACEP's use and registration of the mark that includes the word "aceplay."  Also, since the registration and contact information for Marchex is still available to anyone conducting a WHOIS lookup for <aceplay.com>, the Court is not persuaded that an injunction deprives Marchex of all opportunity to sell the domain name to potential buyers.

**C.   Irreparable harm.**

Without persuasive argument from Marchex, and because of the potential damage to ACEP's reputation, and the potential for dilution of the value of the ACEPLAY mark, the Court finds that ACEP is likely to suffer irreparable harm if an injunction is not granted.

**D.   The public interest.**

Without persuasive argument from Marchex, and because of the likelihood of confusion discussed above, the Court finds that an injunction is in the public interest in order to avoid

consumer confusion.

E.    **Bond amount.**

When issuing a preliminary injunction, a court must require the movant to "give[]
security in an amount that the court considers proper to pay the costs and damages sustained by
any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  As the
Court indicated at the motion hearing, the Court was willing to consider increasing the bond
amount upon a showing of the costs and damages sustained by Marchex as a result of the
injunction.  However, counsel for Marchex merely stated that the value to Marchex was the
marketing value of the internet space, which was "very difficult to estimate," and implied that
the value to Marchex was equivalent to ACEP's value.  Therefore, the Court finds that the bond
amount of $100.00 is reasonable security, particularly in light of Marchex's failure to provide
argument or evidence as to the costs and damages sustained by Marchex as a result of the
injunction.

IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that the Motion for Preliminary Injunction (ECF No. 3) is
**GRANTED**.

**IT IS FURTHER ORDERED** that, pending the final disposition of this case or further
order of the Court, **the hold and lock** placed on the domain name by the Court's temporary
restraining order **shall remain in place**.

**IT IS FURTHER ORDERED** that, pending the final disposition of this case or further
order of the Court, Defendant, including without limitation, all of its respective partners,
officers, agents, servants, employees, and all other persons acting in concert or participation
with Defendant, are hereby preliminarily enjoined from: (A) registering or trafficking in any
domain name containing the ACEPLAY marks or any confusingly similar variations thereof,
alone or in combination with any other letters, words, phrases or designs; and (B) using the

ACEPLAY marks or any confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs in commerce (including, but not limited to, on any website, or within any hidden text or metatags within any website).

**IT IS FURTHER ORDERED** that the $100.00 cash deposit previously made by Plaintiff as security for the temporary restraining order shall remain on deposit with the Clerk of the Court as security for this preliminary injunction pending the final disposition of this case or further order of the Court.

**DATED** this 5th day of July, 2012.

_____
Gloria M. Navarro
United States District Judge